May it please the Court, Alyssa Barnardiani for Defendant's Appellants. We're here because a U.S. court is dictating what's happening in Peru. Having persuaded the District Court to apply Missouri's substantive law at the motion to about a smelting facility in Peru, plaintiffs have gone a step further and sought to apply Missouri's attorney ethics rules to a Peruvian attorney in Peru. Now wait, you say the other side? I thought the other sides agreed that the Missouri rules don't apply in their brief. So Your Honor, what the plaintiffs appear to contend in their brief is that Rule 4.2 does not literally apply, but they have two arguments. One appears to be that the defendants are circumventing Rule 4.2, and the other is this new Al Ritz Act argument that they didn't press. Counsel, I'm dying to ask you this. I didn't get from the briefs and I didn't understand from anything you filed with the court about everything going on in the District Court. This is a snowflake on Antarctica when the District Court's holding joint status conferences and joint discussions and taking briefs from you all about the propriety of all the Peruvian stuff and there's other things in the Florida court, a case going on, and it's all about the Al Ritz Act. I was very disappointed the way you were trying to keep us in the dark. So isn't the right thing to do in this case to get it back to the District Court, which is having hearings about it and issuing court's opinions on this and everything else and considering the Al Ritz Act, which wasn't even considered, right? No, Your Honor. The appropriate course of action is to focus on the motion that the on Rule 4.2 of the Missouri Rules of Professional Conduct. And the court's justification in the hearing and in his initial order are exclusively about the application of Rule 4.2 to a foreign attorney in Peru acting in connection with a Peruvian criminal investigation. And all of this post hoc rationalization is about facts that happened after the court issued that order. The Al Ritz Act was not addressed below. Do you agree with me this is the speck on Antarctica compared to all the stuff you're talking about in the District Court? We, certainly this is a discrete issue on appeal. We're appealing the March court report. That's a very nice way to say, if you read that stuff and listen to it. I looked at the transcript. It's not close. I mean, you've got all kinds of allegations about all kinds of things. The Peruvian interviews are nothing like all the ex parte communications they're talking about. The Peruvian investigation and about the Al Ritz Act. I mean, it just, and you've been doing this since March. So, Your Honor, the order that's on appeal here was issued on March 24th. It's about the plaintiff's March 22nd motion about Rule 4.2. And in their briefing here in this court, the plaintiffs invoke a lot of stuff that happened after that order issued. By definition, the things that happened after that order issued, after their motion, aren't relevant to the propriety of this order about Rule 4.2. Aren't relevant? They're talking about this very stuff too. There is a separate motion raising separate issues that's pending in the district court. It's been pending for six months. The district court hasn't taken any action on that motion. Now, counsel, they had a joint status conference, the two district judges, with all of you on October 28th. They did. The district court... Lengthy. And you had lengthy everything on it. There was a separate status conference and a separate motion related to separate proceedings that aren't at issue in this appeal. So you think the only issue on the appeal is whether Missouri Rule 4-4.2 applies in Peru, right? Yes. So you want us... So you want us... Okay, good. And that was the order that the district court issued on March 24th, 2022. And the events that happened after the court issued its order are a distraction. They're not relevant to the propriety of the order on appeal here. And what is at issue in this court is, as you suggested, the plaintiffs don't really try to defend the district court's order that it sought and that the district court actually issued. The rules of professional conduct don't apply extraterritorially to Peru. And again, Peruvian counsel is representing the defendants in connection with a Peruvian investigation that was initiated... I'm concerned about jurisdiction. This smells to me like a pretrial discovery order. And we don't normally take up pretrial discovery orders. So tell me why. How do we have jurisdiction? The court has jurisdiction under Section 1292A1 because the court's order is injunctive in character. It isn't a discovery order or a case management order because it's not limited to what the parties are doing in this court. What the court's order does is it enjoins Peruvian counsel acting in Peru in connection with a Peruvian criminal investigation. And so it is effectively an anti-suit injunction prohibiting the involvement in foreign law proceedings. And so that's why it's an appealable injunction under 1292A2. But that does not mean that the plaintiffs are right about the reason that the court issued the order or the propriety of the order. The basis for the order was Rule 4.2. Well, counsel, you have pending a motion for anti-suit injunction about everything, right? No, Your Honor. The motion that's pending in the district court is exclusively directed at the Florida proceedings. The motion that's currently pending in the district court is not about the Peruvian investigation. That wasn't the basis. Well, boy, the transcript is full of the Peruvian stuff. So you say there's not a motion. You're lawyering me a little bit. There's not a motion on it. You just talk about it all the time, right? So, you know, there is not a motion that's pending about it. The only motion ever made about the Peruvian proceedings, the only order that the court has ever issued about the Peruvian proceedings is about Rule 4.2. Counsel, at the joint status conference, there's extensive discussion of the propriety of enjoining the Peruvian investigation by the All Writs Act, right? I think, Your Honor, I think that... I read it. Page 709. I read it. Your Honor, I think that shows that it wasn't at issue before the court in the order under the appeal. When Chief Judge Sippel, then Chief Judge Sippel, made his order, he was doing it at a discovery conference, the one you're trying to appeal, right? So, yes, it was a discovery conference. Right. And he just added at the end of a discovery conference, right? Your Honor, again, the motion that the court was considering and the reasons that the court gave in the addendum, we see it at pages, you know, 14 to 15. The exclusive justification the court provided was that he did not want the defendants engaged in ex parte communication with the plaintiffs. That was the explicit stated reasoning of the court in response to the motion about the same topic. And again, Rule 4.2 doesn't apply extraterritorially to Peruvian counsel. It doesn't apply to defendants. So, as I said, plaintiffs have essentially abandoned the argument that it literally applies to Peruvian counsel and now seem to suggest that there's something untoward about defendants circumventing Rule 4.2. But it's an attorney ethics rule. It does not dictate the conduct of the defendants in Peru. The defendants can't circumvent the rule because it doesn't apply to them. And they are entitled under Rule 4.2 to have direct communication with the plaintiffs either here or in Peru. And so, there's nothing to circumvent. So, the fact that the rule doesn't literally apply is the end of the road on the Rule 4.2 argument. You know, it doesn't extraterritorially apply in Peru. But even if the rule applied, there's no communication with the plaintiffs in Peru because sitting in the court history... We don't have fact-finding on really what happens there in this appeal, right? By the way it was done, with the district court just saying it during the discovery conference and then issuing the order, we don't have fact-finding about what communication actually happens in Peru, do we? That's right. There was a disputed fact and it wasn't resolved. But it actually doesn't matter to the court's order because the court didn't... Oh my goodness gracious, counsel. It matters whether you're sitting in the back of a public proceeding or whether you get asked questions. That's night and day, right? So, it certainly matters to the Rule 4.2 inquiry in the abstract. But what the court ordered, the court ordered the Peruvian counsel not to attend witness interviews. He didn't order the Peruvian counsel not to ask questions. So, whether or not Peruvian counsel can ask questions is just not directly relevant to the relief that the court provided. And what the court's order actually does is not rooted in what 4.2 requires. You know, addressing sort of the Alritz Act argument more directly, you know, again... Now, the Alritz Act was not raised at all in the district court, right? It was not. The plaintiffs did not raise it in their motion and the district court didn't address it. Counsel, isn't the implication of many U.S. Supreme Court cases and many Eighth Circuit cases that the district court's supposed to rule on that first? No, Your Honor. The issue wasn't raised below and it's not jurisdictional. There's no reason that the district court has a sui sponte obligation to rule under the Alritz Act in March 24, 2022. But shouldn't they, in this case, rule on the Alritz Act first? It's their jurisdiction we're talking about, right? Your Honor, it's not a jurisdictional issue. That's what the Alritz Act's about, counsel. In case you don't know, read it. It's all about jurisdiction. Writs in aid of their jurisdiction is the ending of it, I think. Correct me if I'm wrong, Court. Yes, Your Honor. Excuse me. I had misunderstood the question. The justification for issuing a writ under the Alritz Act is to protect the district court's jurisdiction. That's right. But again, setting aside whether the issue was presented, it's not supported by the record. What is happening in Peru doesn't violate the district court's discovery orders. Those were discrete discovery orders. The plaintiff sought the production of very specific documents, including the plaintiff profile sheets, for example. Attending witness interviews in Peru, sitting in the room while that's happening, doesn't result in document production to Peruvian counsel. And it also doesn't violate the concern was about case management. What the district court didn't want was to get bogged down with discovery on thousands of plaintiffs. So what he said was that we were going to focus on the trial plaintiffs, the 108 trial plaintiffs full, and we'll take discovery of whatever is relevant from those people. You can get everything that you want about those people. And that case management concern isn't relevant to the Peruvian investigation and whether counsel sits in or doesn't sit in the investigation that's going on. But more fundamentally, the bar for enjoining proceedings under the All Rights Act is extraordinarily high. The cases the plaintiffs cite say they have to make the orders before the court, the court's proceeding, they have to render them a nullity. That's the standard for finding that they affect the district court's jurisdiction. And the proceedings in Peru do not come close to meeting that high bar. If the court has no further questions, I'll reserve the remainder of my time for rebuttal. Your Honor, Kenneth Chesbrough for Plaintiffs and Appellees. May it please the Court. Judge Benton, you're correct that in October there's a joint status conference where there's extensive discussion of this. And I believe that the issue before the court, the specifics of the Rule 4.2 application in Peru is a tiny issue for the reason that Judge Sippel basically laid out his approach to conflicting plans by counsel for how to deal with the issues of fraud that arose in October of 2021. We for the plaintiffs wanted to extensively discover the Jones Day report process to figure out whether there was any problems with the witnesses that were being relied on for the claims of fraud. But on the other side, Doe Run wished to basically discover the files of Plaintiffs' Counsel and the contacts with nearly 2,000 plaintiffs. And so what Judge Sippel decided to do was to focus on the 108 trial pool plaintiffs and have a process by which each of those plaintiffs or their parents in Peru would have to show up and have to re-verify that they wished to proceed with the lawsuit, that the documents were genuine, and they'd have to sign release papers to ensure that Doe and all the documents were, in fact, legitimate. That process was finished by June 4th, and in the July status conference in docket 679 at 13 to 15, it was reported that basically there was no evidence of fraud found by looking at the 108 trial pool plaintiffs. That is, of the 108, 92 were fully verified as wanting to proceed. There were others that didn't and the counsel for Doe Run at 64 said that, oh, we now are really concerned about those that were dismissed with prejudice because under their theory, people that were dismissed with prejudice, those must be the ones that had files that were infected by fraud because maybe they were dismissed with prejudice because they didn't want to proceed. And so the thing about Judge Sippel's March 24th order that's so significant is that he made very clear that it's none of his business what Doe Run does in Peru regarding those that were dismissed with prejudice. Doe Run is completely free to work with the prosecutors in Peru and go through the hundreds of people that were dismissed with prejudice, apparently, and find evidence of fraud. They could be in the room, they could ask questions. That's the place where Doe Run's theory is fraud will be found. Boy, you just convinced me this is a discovery dispute if God ever invented one. Well, yes, it's discovery into the claims that there's fraud in the files of the plaintiffs before Judge Sippel. And so the reason this is a very small issue, the issue of the ability of Doe Run's lawyer in Peru to be in the room with our current clients that are currently before Judge Sippel is that they never claimed in the March 24th hearing that there was any effort by Doe Run to engage in the process. They insisted that everyone being interviewed in Peru was dismissed with prejudice and that was a guardrail for them, they weren't going to do that. And then subsequently, in the motion papers that were filed a month later, they again said that we were misrepresenting the situation by claiming that there was any effort by Doe Run to interview current plaintiffs. But it was only in the motion for a stay of appeal that Doe Run then suggested that this is in docket 628 at 11. They said, well, given that there are ongoing law enforcement interviews with the current plaintiffs, what they suggested was that there may be in the future law enforcement interviews of current plaintiffs. That was the only time that they took the position that they wanted the ability to talk to our current clients in Peru. And that's where it's so important that Judge Sippel came back with a formal opinion, not just the oral statements of March 24th. May 19th, he issued the decision that's in addendum at 18 and 19, where he specifically states, and this is, I think, in line with the All Writs Act, even though we didn't cite it, he's exercising... It was not discussed at all in the first case, right? It wasn't discussed. And it is the focus of what's going on now in the district court, right? Right, regarding Florida actions. But at 18 and 19... And everything else. It's more wide-ranging than just Florida. There are more allegations about Peru and what's going on there. Yes, that there's... Yeah, lots more. Right. So this may evolve into a further motion regarding Peru. But the reason I cite addendum 18 and 19 as significant is that that is where, after Doran specifically stated that their agenda is to interview our current clients in Peru without us being present, that's where Judge Sippel says, look, this is an attempt to circumvent the limitations of Rule 4.2. He wasn't saying that it extraterritorially applied to Peru, but he said that the lawyers of Doran before... That's what it sounds like, lawyerly talk. And I realize you're bound ethically to say what's right, but I read what you say in your brief. You're not really... Well, you say so. You correctly say that Rule 4-4.2 does not apply to Peru lawyers. I'm paraphrasing, but I'm very close to your words there. You're not defending the court's order based on 4-4.2? We're defending it on what he says in addendum 19, which is the defense lawyers before me in this court are bound by 4-4.2, and therefore they cannot go to Peru to talk ex parte with the clients, the plaintiff's counsel. And so what I'm saying is they are trying, by hiring a Peruvian lawyer, they are effectively circumventing my order that we're only focusing on current plaintiffs in the trial pool and not plaintiffs beyond the 108. So effectively it's using the Peruvian lawyer as a cat's paw to achieve something that he doesn't want to allow in terms of discovery in his court. So that's effectively why we are focusing on Rule 4-4.2 as limiting defense counsel in the United States and his finding that there's an effort to circumvent that limitation by hiring a lawyer in another country. You think we have to defend it on a different ground than he ruled on? Well, I think he never ruled, as I think makes clear for this May 19 order, he never ruled that, as clarified here, he never ruled that it directly applied to a Peruvian lawyer. He said it applies to defense counsel in my courtroom, and I want to prevent the party from circumventing that limitation on discovery in my case. That's almost a laughable argument because parties can talk to each other in the hallway and settle a case. That's true. And tell the lawyers, get lost, we're settling the case. Get lost. Yes, indeed. So I think... So that's pretty fast, that's pretty thin. It's beyond thin, I think. Right, right. To say that the party cannot have an agent in Peru, that would not be covered by Rule 4-4.2. Yes, sir. So we agree with that. So relating to the issue of whether to remand this, I understand the impulse to say that there was no actual analysis of the All Rights Act by Judge Sippel in this context, and that he's only reviewing it regarding the Florida actions. But I believe that if you look at the May 19 order, where he clarifies that he wants to prevent circumvention of his plan for discovery of the allegations of fraud in this court, that it's clear that that analysis is fully supportive of an All Rights Act exercise of authority. So there wouldn't need to be a remand. As to Judge Grunder's question about jurisdiction... You in fact had a pretty extensive motion to dismiss based on lack of jurisdiction, which you withdrew. Right. That was at a time when it was being viewed as more of a protective order tied to an existing discovery dispute. I think you could see it either way. But the reason why it could be viewed as an injunction is that precisely because the attorney in Peru is not an American lawyer who has made an appearance in this case, it effectively prevents him... It operates in a way that is more injunctive of character. That is, we all understand that the protective order can be directed against the party and against attorneys who appear. This is a more ambiguous situation. If you had questions about whether there's actually jurisdiction because it may not be an injunction, then you could, I think, remand it. And this could be combined with the All Rights Act questions regarding Florida. And then at the end of that process, Judge Sippel could certify this for review of all the issues. That might be a way to avoid a naughty jurisdictional issue. And it might also relate to Judge Benton's point that this is a relatively small contained matter compared to the more significant issue of whether Judge Sippel can maintain control over his courtroom and prevent a door run from running off to Florida and asking judges there to rectify fraud before Judge Sippel without telling those judges that Judge Sippel had already considered it and had gone to court. And also, Judge Perry, these are joint two district conferences, as you well know. Two judges and two cases are involved. Right. And it appears that Judge Perry deferred to Chief Judge Sippel to take the lead on this. So if there are any further questions, I'd be happy to answer it. Otherwise, that's it. Thank you. Thank you, Mr. Chesbrough. I'd like to begin with the plaintiff's motion to dismiss this appeal, which your honors brought up. That motion was filed in June of 2022. And in June of 2022, the plaintiffs represented to this court that the district court's order was not an injunction. And that's strong evidence that nobody in this case, not the parties, not the court, understood as of June 2022, the district court's order to be an injunction under the Albright Act. Everybody, as of June 2022, understood this to be about Rule 4.2. I thought you just argued to me that the basis of the injunction was, or the basis of our jurisdiction, was that this was like an anti-suit injunction. Yes, your honor. To be clear, we believe that the order is injunctive in character, but the order that we're talking about is the application of Rule 4.2 to Peruvian counsel's actions in Peru to bar him from attending Peruvian law enforcement proceedings has the effect of an anti-suit injunction. But the reason that the court gave for that order that has an injunctive effect is Rule 4.2. So the application of Rule 4.2 was the basis for the order in the district court. Now, the plaintiffs rely extensively here on the district court's ruling on the stay motion, which was issued in May. Again, that precedes their June 2022 motion to dismiss the appeal, which we were just in that order from May at page 15 of the addendum. What the district court is responding to are all of the party's arguments about Rule 4.2. We argue that the Rule 4.2 doesn't apply to the Peruvian investigation, even if it's related. It doesn't apply to the parties. It doesn't apply via U.S. counsel because Peruvian counsel isn't an agent of U.S. counsel. And those are the arguments that the district court is responding to in that stay order that the plaintiffs were just citing. It isn't talking about the Alritz Act. Again, the Alritz Act didn't come up in this appeal until July 2022 in the plaintiff's response brief for the first time. Now, as your honors, everyone has noted, there are currently Alritz Act actioned a motion about the Alritz Act that is pending in the district court. It's targeted. The motion was targeted at Florida proceedings. And I'd like to just explain a little bit what those proceedings are. One is an action in federal court under 28 Section 1782 to assist the Peruvian law enforcement officials in gathering evidence for the use in the Peruvian investigation. It's a specific vehicle to help assist with foreign proceedings. And one is a malicious prosecution case that is intended to seek compensation for without just cause. Those are not the same thing. They're not directly related to the Peruvian investigation. The Peruvian investigation has been going on since early 2021. It's proceeding that Peruvian law enforcement is acting independently in investigating what's happening in Peru. But regardless of what's going on in Peru, regardless of what the courts were saying in their October 28th status conference, the Alritz Act issue was not before the court when this order was issued. And so this court should focus on Rule 4.2. And the fact, Your Honor, as Your Honor mentioned, that the Peruvian investigation was somehow brought up by the court in the hearing, I think further cautions against prejudging the Alritz Act question because it isn't properly before this court. It wasn't ever raised. It wasn't the basis of the plaintiff's motion. It wasn't addressed by the district court. And whatever the scope of the Alritz Act motion is, it's currently pending and it hasn't been resolved. So there's no need for this court to wade into the morass. What the court should do is it should hold that the district court's order predicated on Rule 4.2 is erroneous because it misunderstands and misapplies Rule 4.2. That rule doesn't apply extraterritorially to Peruvian counsel. It doesn't apply to defendants. And Peruvian counsel isn't acting as an agent of U.S. counsel. So there's no, you know, the circumvention that counsel is talking about is unsupported by the record in this case. So if there are no further questions, the court should vacate the district court's order. Thank you. Thank you. Court appreciates counsel's appearance today and argument and briefing. It's a bit of a handful, but we'll wrestle with it and do our best to issue an opinion in due course.